NATIONAL LABOR RELATIONS BOARD, Petitioner–Appellant–Cross–Appellee,

v.

LOCAL 348–S, UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, Respondent–Appellee–Cross–Appellant.

Nos. 06–3900–ag(L), 06–5383(XAP).

United States Court of Appeals, Second Circuit.

April 10, 2008.

Fred B. Jacob & Kellie Isbell, National Labor Relations Board (Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel on the brief), Washington, DC, for Petitioner–Appellant–Cross–Appellee.

J. Warren Mangan, O'Connor & Mangan, P.C., New Rochelle, NY, for Respondent–Appellee–Cross–Appellant.

PRESENT: Hon. WALKER, Hon. B.D. PARKER, Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Local 348–S appeals the determination of the National Labor Relations Board ("NLRB") that, among other things, invali-

---

dated Local 348–S's election as a representative for Dairyland's truck drivers and warehousemen due to the taint of illegal management interference on behalf of Local 348–S. We assume the parties' familiarity with the underlying facts and the procedural history of the case.

Dairyland, a food distributor headquartered in the Bronx, employs approximately 150 truck drivers and warehousemen Local 348–S, which sought to unionize and represent the Dairyland employees, entered into a neutrality agreement with Dairyland management that gave Local 348–S information about, and access to, the Dairyland employees. (A–687–689). After receiving 111 signed authorizations, Local 348–S became the Dairyland employees' collective bargaining representative, and the following day, Local 348–S and Dairyland signed a collective agreement.

In March 2004, the NLRB issued a consolidated complaint alleging that Dairyland violated Section 8(a)(1), (2), (3) and (4) of the National Labor Relations Act, *see* 29 U.S.C. §§ 151–169, for taking various actions to illegally support Local 348–S and that Local 348–S violated Section 8(b)(1) and (2) of the Act. After a sixteen-day hearing, an Administrative Law Judge ("ALJ") found, among other things, that Dairyland violated the Act, including that threats and messages from Dairyland and promises of additional benefits to Dairyland employees who signed authorization cards violated Section 8(a)(1) of the Act. The ALJ found that the NLRB's burden of proof had not been satisfied as to various other allegations.

For instance, the ALJ concluded that the NLRB had not met its burden to "establish that the union accorded exclusive recognition was not the majority representative." In doing so, the ALJ stated:

I credit Richardson's testimony that Maldonado was present when he signed

the union authorization card. I have also found that Kelly told the 18 warehouse employees in the day crew that they have to sign the cards. Accordingly, I find that General Counsel has sustained her burden of showing that 19 of the employees were not "uncoerced."

The unit consists of 150 employees, 111 signed authorization cards. Subtracting the above-mentioned 19 cards results in 92 validly signed cards. This constitutes a majority of unit employees. I find that General Counsel has not sustained her burden and the allegation is dismissed.

On appeal, the National Labor Relations Board ("NLRB") adopted the ALJ's factual and credibility findings and its rulings regarding various violations of the Act, but it reversed the ALJ's determination regarding the selection of Local 348–S as the bargaining representative. The NLRB found that Dairyland's "conduct demonstrates a pattern of unlawful assistance to the Union sufficient to taint the Union's majority support," that Dairyland violated Section 8(a)(3) of the Act by entering into a collective bargaining agreement containing a union security clause when the Union did not represent an uncoerced majority of employees, and that Local 348–S violated Section 8(b)(1)(A) of the Act by accepting unlawful assistance from Dairyland and improperly entering into a collective bargaining agreement without the support of an uncoerced majority of employees.

In reversing the ALJ's decision, the NLRB explained that "[r]ather than considering whether the totality of the circumstances demonstrated a pattern of unlawful assistance, the judge simply [and incorrectly] subtracted 19 tainted authorization cards from the 111–card total and found that a majority of uncoerced employees still supported the Union." Local

348–S appeals from this decision and order.

## Discussion

It is well settled that "[w]e will not reject factual findings unless no rational trier of fact could have arrived at the Board's conclusion." *NLRB v. Windsor Castle Health Care Facilities, Inc.*, 13 F.3d 619, 623 (2d Cir.1994). "Our role in reviewing credibility determinations of an ALJ, affirmed by the Board, is even further constricted, inasmuch as they may not be disturbed unless incredible or flatly contradicted by undisputed documentary testimony." *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 763 (2d Cir.1996). After reviewing the record, we find that the factual findings and credibility determinations in question were rational and grounded in the record. Consequently, we affirm them.

We also affirm the NLRB's legal conclusion that the majority vote for Local 348–S should be invalidated. "We must enforce the Board's order where its legal conclusions are reasonably based...." *Id.* at 763. The NLRB reversed the ALJ's determination that interference with the union election by Dairyland did not invalidate Local 348–S's majority because the ALJ "applied a purely mathematical analysis" and did not properly examine the "totality of the circumstances." The NLRB determined, among other things, that Dairyland: (1) illegally directed eighteen employees to vote for Local 348–S; (2) issued threats to get employees to vote for Local 348–S; and (3) continued a pattern of unlawful assistance by threatening workers who favored a union other than Local 348–S. This conduct, the NLRB found, "demonstrates a pattern of unlawful assistance to the Union sufficient to taint the Union's majority support."

We have long held that "[i]t is unnecessary, in negating a claim of an uncoerced [union] majority, to show mathematically that less than a majority freely signed authorization cards. A pattern of company assistance can be sufficient to invalidate all cards." *Amalgamated Local Union 355 v. NLRB*, 481 F.2d 996, 1002 n. 8 (2d Cir.1973). Furthermore, "[o]nce it is shown that [management] unlawfully assisted [the union] in garnering union support, any subsequent recognition of the union is tainted." *Windsor Castle Health Care Facilities, Inc.*, 13 F.3d at 623. In light of our precedent, the NLRB's decision that the interference found by the ALJ tainted Local 348's majority support is reasonably based and well grounded in the record.

During oral argument, counsel for Local 348–S requested, with respect to the provision ordering reimbursement of Dairyland employees, that we consider directing the NLRB to impose an order in this case similar to the order imposed in *Katz's Delicatessen, Inc.*, 80 F.3d at 755. We decline to do so because we agree with the NLRB's conclusion regarding the appropriate scope of the reimbursement order in this case.

For all the foregoing reasons, the NLRB's application for enforcement is GRANTED and the cross-petition for review is DENIED.